# In re H-A-, Respondent

*Decided May 25, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

*Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), is not inconsistent with the motions to reopen regulations at 8 C.F.R. §§ 3.2(c)(2) and 3.23(b)(4)(i) (effective July 1, 1996). *Matter of Arthur, supra,* reaffirmed.

John H. Hagopian, Esquire, Englewood Cliffs, New Jersey, for respondent

Before: Board En Banc: DUNNE, Vice Chairman; VACCA, HEILMAN, FILPPU, COLE, MATHON, JONES, GRANT, and SCIALABBA, Board Members. Dissenting Opinion: VILLAGELIU, Board Member, joined by SCHMIDT, Chairman; HOLMES, HURWITZ, ROSENBERG, GUENDELSBERGER, and MOSCATO, Board Members.

SCIALABBA, Board Member:

This case was last before us on April 17, 1997, when we denied the respondent's motion to reopen filed on September 25, 1996, for the purpose of applying for adjustment of status under section 245(i) of the Immigration and Nationality Act, 8 U.S.C. § 1255(i) (1994 & Supp. II 1996). The motion to reopen was denied because the visa petition filed on the respondent's behalf had not yet been approved. The respondent has submitted a motion to reconsider our April 17, 1997, denial of his motion and has also submitted a "Supplement to Motion to Reconsider" based on the fact that the immediate relative visa petition filed on his behalf was subsequently approved. We construe the respondent's May 20, 1998, "supplement" to be a motion to reopen because he has presented evidence that was previously unavailable. Such motion is both time and number barred under 8 C.F.R. § 3.2(c)(2) (1999). The respondent's motion to reconsider our April 17, 1997, decision will be denied.[1]

---

[1]We will not be determining whether the respondent is eligible for adjustment of status in this case. Rather, we will only address the specific issue raised in his motion to reconsider—whether *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), should be modified.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a 37-year-old male native and citizen of Sudan[2] who entered the United States on January 26, 1990, as a nonimmigrant authorized to stay for 6 months. He overstayed his visa. The Immigration and Naturalization Service issued him an Order to Show Cause and Notice of Hearing (Form I-221) on June 24, 1993. The respondent filed an asylum application with the Immigration Court, which was denied on January 31, 1994. The Immigration Judge did, however, grant the respondent voluntary departure until March 7, 1994. The respondent appealed the Immigration Judge's decision to deny asylum. While the appeal was pending with this Board, the respondent married a United States citizen on July 27, 1994.

We dismissed the respondent's appeal on September 7, 1995, but gave him 30 days from the date of our order to voluntarily depart the United States. On September 18, 1996, nearly a year after the respondent's voluntary departure period ended and over 2 years after the couple were married, the respondent's spouse filed a Petition for Alien Relative (Form I-130) on his behalf with the Service. The respondent also filed an application to adjust his status with the Service on the same day. One week later, on September 25, 1996, the respondent filed with this Board a motion to reopen his deportation proceedings so that he could apply for adjustment of status.[3] The Service did not file an opposition to the motion. Because the visa petition had been filed only a week earlier, the Service had not yet adjudicated it when the respondent filed his motion to reopen. We denied the respondent's motion on April 17, 1997, in accordance with *Matter of Arthur,* 20 I&N Dec. 475 (BIA 1992), which requires an approved immediate relative visa petition before a case may be reopened for adjustment of status. In *Matter of Arthur, supra*, we determined that we will not grant

---

[2]We observe that the respondent, as a national of Sudan, could have applied for Temporary Protected Status ("TPS") with the Immigration and Naturalization Service separate and apart from the issues before us relating to the denial of the motion to reconsider; however, the record contains no evidence that he has done so. *See* 62 Fed. Reg. 59,737 (1997) (designating Sudan for TPS effective November 4, 1997, until November 3, 1998); 63 Fed. Reg. 59,338 (1998) (extending designation until November 3, 1999).

[3]The question arises whether the respondent is barred from reopening his case to apply for adjustment of status under *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), because he has failed to voluntarily depart the United States by his departure date in accordance with our April 17, 1997, order. However, we note that although the Immigration Judge stated during the hearing that he was giving the respondent written and oral warnings of the consequences of failing to depart the country as ordered, the record does not contain the written warnings. *See* section 242B(e)(2) of the Act, 8 U.S.C. § 1252b(e)(2) (1994). Thus, it is unclear if the respondent would be ineligible to adjust his status for a period of 5 years under section 242B of the Act.

motions to reopen for the consideration of adjustment applications based upon unadjudicated visa petitions which fall within the ambit of sections 204(g) and 245(e) of the Act, 8 U.S.C. §§ 1154(g) and 1255(e) (Supp. II 1990), as discussed more fully *infra*.

On May 16, 1997, the respondent filed a timely motion to reconsider our April 17, 1997, decision denying his motion to reopen. *See* 8 C.F.R. § 3.2(b)(2) (1997).[4]  In the motion to reconsider, the respondent, through counsel, argues that the Board should revisit its decision in *Matter of Arthur, supra,* because it is inconsistent with the new motions regulations, which permit only one motion to reopen to be filed no later than 90 days after the final administrative decision. *See* 8 C.F.R. § 3.2(c)(2) (effective July 1, 1996). The respondent's motion to reconsider is based on the dissenting opinion that was part of our April 17, 1997, decision. The respondent contends that we should provide an exception to the *Arthur* rule because it is now inconsistent with due process, in light of the motions regulations. He argues that if we continue to apply *Matter of Arthur* without exception, we will be effectively foreclosing adjustment of status to eligible aliens because the motions regulations do not provide sufficient time for the visa petition adjudication process to be completed before the deadline for filing a motion to reopen expires.

## II. ISSUE

The issue before us is whether to modify our holding in *Matter of Arthur, supra*, and permit an alien to file a timely motion to reopen on the basis of a simultaneously filed adjustment application and an unapproved immediate relative visa petition that is based upon a marriage entered into during deportation or removal proceedings.

We conclude that *Matter of Arthur* should not be modified. The rationale for the *Arthur* rule remains because Congress has not modified the presumption it created in section 5 of the Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, 3543 ("IMFA"), and the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978 ("IMMACT 90"), that a marriage entered into after the institution of proceedings is fraudulent, unless overcome by a showing of clear and convincing evidence that it is bona fide. *See Matter of Arthur, supra*, at 479. Congress also mandated that the filing of motions be lim-

---

[4]We note that the Service has not filed an opposition to the motion. *See* 8 C.F.R. § 3.2(g)(3).

ited in time and number in order to reach finality in deportation cases. These motions restrictions will end many cases where eligibility for relief arises late in the process, not just marriage fraud cases. As a result, the regulations will effectively require most out-of-time claimants, not just those with unadjudicated immediate relative visa petitions, to pursue their applications outside the context of deportation or removal proceedings, and often to do so outside of the United States. To create an additional exception to the motions restrictions for aliens falling within sections 204(g) and 245(e) of the Act would undermine the purpose of such restrictions—finality in deportation and removal cases. Finally, as we stated in *Matter of Arthur,* the suggested modification would "constitute a substantial and unwarranted intrusion into the district director's authority" if this Board attempts or, more particularly, if Immigration Judges attempt to evaluate whether clear and convincing evidence of a bona fide marriage has been shown. *See id.* at 479; 8 C.F.R. § 204.2 (1999).

## III. *MATTER OF ARTHUR*

In *Matter of Arthur, supra,* we modified our decision in *Matter of Garcia*, 16 I&N Dec. 653 (BIA 1978), based on Congress' 1986 enactment of the IMFA. Congress saw immigration-related marriage fraud as a serious problem and passed legislation designed to deter fraud by aliens seeking to acquire lawful permanent residence in the United States through marriage to a United States citizen or a lawful permanent resident alien. Section 5 of the IMFA provides, regarding an alien's right to enter or remain the United States, that if the alien marries while an administrative or judicial proceeding is pending, he or she may not use that marriage as a basis for adjustment of status or to gain immediate relative or preference status. *See* H.R. Rep. No. 99-906, at 11 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5978, 5983; *see also* sections 204(g), 245(e)(1) of the Act.

In 1990, Congress amended the IMFA by creating a bona fide marriage exception. In section 702 of the IMMACT 90, 104 Stat. at 5086, Congress enacted a provision that allows an alien to overcome the marriage fraud presumption, but only if he or she is able to demonstrate by clear and convincing evidence the bona fides of the marriage. This provision also limits an alien to one administrative review in order to promote finality. *See* H.R. Rep. No. 101-723(I), at 51-52 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6710, 6731-32; H.R. Conf. Rep. No. 101-955, at 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793; *see also* section 245(e)(3) of the Act.

It was within this framework that we issued our *decision in Matter of Arthur, supra.* In *Matter of Arthur,* we stated that the presumption estab-

lished in *Matter of Garcia*, *supra*,[5] was inconsistent and incompatible with the congressionally mandated presumption that marriages entered into after the institution of proceedings are fraudulent. *Matter of Arthur, supra*, at 479. We held that motions to reopen for adjustment of status based upon unadjudicated visa petitions which fall within the ambit of sections 204(g) and 245(e) of the Act will not be granted.[6]

## IV. MOTIONS RESTRICTIONS

In section 545(d) of the IMMACT 90, 104 Stat. at 5066, Congress also addressed the problem of successive and frivolous administrative motions. *See Stone v. INS*, 514 U.S. 386, 400 (1995) ("[A] principal purpose of the 1990 amendments to the INA was to . . . redress the related problem of successive and frivolous administrative appeals and motions."). Congress directed the Attorney General to issue regulations limiting the number of motions to reopen and the maximum time period during which a motion to reopen may be submitted. *See* H.R. Conf. Rep. No. 101-955, at 133 (1990),

---

[5]In *Matter of Garcia*, we held that, absent clear ineligibility, motions to reopen generally should be granted for adjustment applications supported by simultaneously filed visa petitions with immediate visa availability. *See Matter of Garcia, supra,* at 657. Thus, a pending prima facie approvable visa petition was treated as though it were already approved for purposes of reopening. *Id.*

[6]Section 204(g) of the Act states:

[E]xcept as provided in section 245(e)(3), a petition may not be approved to grant an alien immediate relative status or preference status by reason of a marriage which was entered into during the period described in section 245(e)(2), until the alien has resided outside the United States for a 2-year period beginning after the date of the marriage.

Section 245(e) of the Act states:

(1) Except as provided in paragraph (3), an alien who is seeking to receive an immigrant visa on the basis of a marriage which was entered into during the period described in paragraph (2) may not have the alien's status adjusted under subsection (a).

. . . .

(3) Paragraph (1) and section 204(g) shall not apply with respect to a marriage if the alien establishes by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and . . . the marriage was not entered into for the purpose of procuring the alien's entry as an immigrant and no fee or other consideration was given . . . for the filing of a petition under section 204(a) or 214(d) with respect to the alien spouse . . . . In accordance with regulations, there shall be only one level of administrative appellate review for each alien under the previous sentence.

*reprinted in* 1990 U.S.C.C.A.N. 6784, 6798. In fact, the restrictions Congress had in mind were much more restrictive than those eventually issued by the Attorney General. "Unless the Attorney General finds reasonable evidence to the contrary, the regulations should state that such motions be made within 20 days of the date of the final determination . . . ." *Id.*

Pursuant to the congressional mandate, the Attorney General revised the reopening regulations, effective July 1, 1996. Subject to certain exceptions, a party may file only one motion to reopen and it must be filed within 90 days of the final administrative decision, or on or before September 30, 1996, whichever is later. *See* 8 C.F.R. §§ 3.2(c)(2), 3.23(b)(4)(i) (1997); *Matter of J-J-,* 21 I&N Dec. 976 (BIA 1997) (holding that reopening sua sponte is limited to exceptional circumstances and is not meant to cure filing defects or circumvent the regulations to prevent hardship).[7]

While the Attorney General was in the process of revising the motion to reopen regulations, Congress codified the motions restrictions in section 304(a)(3) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546, 3009-593 ("IIRIRA"). This sent a clear message that Congress wanted an end to successive and frivolous motions to achieve finality in removal cases. *See* sections 240(c)(5), (6) of the Act, 8 U.S.C. §§ 1229a(c)(5), (6) (Supp. II 1996); *see also Removal of Criminal and Illegal Aliens: Hearing before the Subcomm. on Immigration and Claims of the House Comm. on the Judiciary,* 104th Cong., 1st Sess. 2 (Mar. 23, 1995) (statement of Hon. Lamar Smith, Subcomm. Chairman) (aliens "often file . . . dilatory procedural motions . . . in an effort to extend their stay and become eligible for relief. The time clock should stop when people are put in proceedings, and we must stop the abuse of this system to delay deportation.").

## V. DISCUSSION

Contrary to the respondent's contention, we do not find an inconsistency between our holding in *Matter of Arthur, supra*, which is based on the IMFA, and the motions restrictions. The purpose of the IMFA is to deter immigration-related marriage fraud. The purpose of the motions regulations is to bring finality to administrative proceedings. These goals are distinct and separate are in no way inconsistent. After examining Congress' activity and inactivity with these two matters, we see no need either to modify the *Arthur* rule or to create an exception to the motions regulations for aliens

---

[7]The regulation at 8 C.F.R. § 3.2(b)(2) also limits the alien to one motion to reconsider submitted within 30 days of the mailing of the Board's decision.

with unadjudicated immediate relative visa petitions, for two reasons. First, within the IMMACT 90, Congress both created the bona fide marriage exception and mandated that the Attorney General issue motions restrictions that include an exception for asylum claims arising from changed country conditions. In contemporaneously considering these two issues of marriage fraud and motions restrictions in 1990, Congress chose not to mandate an additional motions exception for marriage fraud cases.

Second, after we issued our 1992 holding in *Matter of Arthur*, Congress codified the motions restrictions in the IIRIRA in 1996. While Congress specifically included a time limit exception for asylum applicants based on changed country conditions,[8] it did not create an exception for aliens who fall within the ambit of the *Arthur* rule and the 90-day motion deadline. Thus, Congress had two opportunities to amend the marriage fraud presumption or to create an additional exception to the restrictions for marriage fraud cases, but it declined to do either in both 1990 and 1996. The Supreme Court assumes that Congress is aware of existing law when it passes legislation. *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 118 S. Ct. 789, 801 (1998). We can therefore assume that Congress was aware of our holding in *Matter of Arthur* when it chose not to modify the marriage fraud presumption or to create an *Arthur* exception to the motions restrictions in the IIRIRA. Based on Congress' inactivity, we decline to modify the *Arthur* rule or to create an additional motions exception.

Furthermore, while there is now statutory authority for motions in removal cases, the authority for motions to reopen deportation proceedings is derived solely from regulations promulgated by the Attorney General. *INS v. Doherty*, 502 U.S. 314, 315 (1992); *INS v. Rios-Pineda*, 471 U.S. 444, 446 (1985). Any decision to grant a motion to reopen deportation proceedings is a matter within the discretion of this Board. *See INS v. Rios-Pineda, supra*, at 449; *INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984). It is within this Board's discretion to determine that, in light of the marriage fraud presumption, visa petitions based on marriages entered into during proceedings must be approved before we will consider a motion to reopen for adjustment on that basis.

The respondent argues that if we do not modify our holding in *Matter of Arthur, supra,* we will effectively foreclose adjustment of status in all cases where motions to reopen are filed after July 1, 1996, the effective date of the new motions restrictions, because the Service does not have a reasonable opportunity to adjudicate a visa petition within the 90-day period required to file a motion to reopen.[9] The dissent frames a policy argument

---

[8]*See* section 240(c)(6)(C)(ii) of the Act (Supp. II 1996); *see also* 8 C.F.R. § 3.2(c)(3)(ii).

[9]This argument is based on the assumption that the marriage takes place on the day the proceedings become final, because it is at that point in time that the respondent has 90 days in which to file a motion to reopen the proceeding.

against *Matter of Arthur*, contending that its application will impose an absolute bar to adjustment of status based on marriages entered into during the pendency of proceedings. According to the dissent, the *Arthur* rule violates Congress' express intent by negating the statutory exception of section 245(e)(3) of the Act, which permits adjustment where the bona fide nature of the marriage is established.

We reject these arguments. Contrary to the dissent's view, no absolute bar results from *Arthur*. The result is that an alien must have a visa petition approved prior to or within 90 days of a final order to take advantage of the bona fide marriage exception. Despite the dissent's reference to an alien's "statutory right" to apply for adjustment of status, adjustment is a form of relief from deportation or removal, the grant or denial of which remains within the exercise of this Board's discretionary authority. Moreover, we cannot ignore Congress' express legislative purpose behind the motions restrictions—to bring deportation and removal cases to a close. Finally, we note that the motions restrictions may affect those who find themselves eligible for various forms of relief late in the deportation or removal process. Unlike marriages entered into during proceedings, other forms of relief that may arise late in deportation or removal proceedings are not subject to a presumption of fraud. There are no exceptions to the motions restrictions other than those set forth in the implementing regulation at 8 C.F.R. § 3.2(c)(3). Among the exceptions are a motion to reopen to apply for asylum based on changed country conditions and a motion to reopen agreed upon by all parties and jointly filed. *See* 8 C.F.R. § 3.2(c)(3)(ii)(iii); *see also* section 240(c)(6)(C)(ii) of the Act. Even if a visa petition is not timely approved, an alien has the possibility of seeking and obtaining the Service's acquiescence to a joint motion pursuant to 8 C.F.R. § 3.2(c)(3)(iii). For these reasons, we find the dissent unpersuasive.

With respect to this particular case, we find that the respondent is not a victim of the motions regulations as he claims. The respondent was married for over a year before this Board issued a final order, which granted him 30 days to voluntarily depart the United States. If the respondent's wife had filed a visa petition in a timely manner, there is a very good possibility that the petition would have been adjudicated before this Board issued its final order. Furthermore, the respondent could have voluntarily departed the United States and pursued his immigrant visa abroad. However, the respondent chose not to depart the United States, and his spouse did not file a visa petition on his behalf until September 18, 1996, 2 years after the couple were married and 1 year after the respondent's voluntary departure period ended. One week later, on September 25, 1996, which was shortly before the September 30, 1996, motion deadline, the respondent filed his motion to reopen. It is not surprising that, when the respondent filed his motion 7 days after he filed the visa petition, the petition remained unadjudicated. This is the type of delay and dilatory tactics that Congress sought to halt in

1990 and again in 1996, in codifying the motions restrictions in section 304(a)(3) of the IIRIRA.

The respondent suggests that we examine the evidence that he has submitted in support of his motion, in order to judge whether he has shown clear and convincing evidence of a bona fide marriage under 8 C.F.R. § 204.2(a)(1)(iii)(E) (1997). In *Matter of Arthur, supra*, however, we noted the jurisdictional problem involved if we or, more particularly, Immigration Judges inquire into whether the evidence submitted in support of a visa petition is sufficient. We stated that "in light of the heavy burden imposed on the petitioner, to demonstrate prima facie eligibility for the preference sought," such an inquiry on our part or that of Immigration Judges "would necessarily involve an in-depth examination into the merits of the petition. Such examination would, in our view, constitute a substantial and unwarranted intrusion into the district director's authority over the initial adjudication of visa petitions." *Id.* at 479. Because this issue remains a concern today, particularly with respect to Immigration Judges,[10] we shall decline to preadjudicate, issue an advisory opinion on, or second-guess the outcome of visa petitions based on marriages entered into during proceedings that are within the jurisdiction of the district director.

## VI. CONCLUSION

We do not find that *Matter of Arthur, supra*, should be modified in light of the motions restrictions. Our decision in *Matter of Arthur* stems from the IMFA, federal legislation designed to end marriage fraud. Congress has also clearly indicated its intent to end the practice of filing numerous dilatory motions and to bring immigration cases to a close. Because Congress has not amended the marriage fraud presumption and because we cannot ignore its mandate to bring closure to cases through the use of motions restrictions, we find that our decision in *Matter of Arthur* should not be modified. Eligible aliens can continue to seek adjustment of status based on a marriage entered into during proceedings. However, they will be required to comply with the requirements set out in *Matter of Arthur*. Aliens who marry late in the removal process, or who have petitions filed for them at a late stage, will obviously run the risk of having to complete the immigration process from outside the country.

---

[10]We note that jurisdiction to determine whether an alien is eligible for family-based immigrant visas lies initially with the district director and is subject to our appellate review. *See* 8 C.F.R. §§ 3.1(b)(5), 204.2 (1999). Immigration Judges do not have original jurisdiction or direct review over such visa petitions.

**ORDER:**  The motion to reconsider is denied.

**FURTHER ORDER:**  The Board's grant of a stay of deportation pending adjudication of the motion is vacated.

*DISSENTING OPINION:*  Gustavo D. Villageliu, Board Member, in which Paul W. Schmidt, Chairman; David B. Holmes, Gerald S. Hurwitz, Lory D. Rosenberg, John Guendelsberger, and Anthony C. Moscato, Board Members, joined

I respectfully dissent from the denial of the respondent's motion to reconsider our denial of his motion to reopen seeking adjustment of status. The respondent is the husband and father of United States citizens and the beneficiary of an approved immediate relative visa petition. We should not as a matter of policy deprive him of his statutory right to apply for adjustment of status.

The majority inappropriately links legislation designed to end marriage fraud with general congressional intent to bring immigration cases to a close in order to preclude aliens eligible to adjust their status from the opportunity to do so. In so doing, the majority recognizes that certain aliens "will obviously run the risk of having to complete the immigration process from outside the country." *Matter of H-A-,* 22 I&N Dec. 3394, at 11 (BIA 1999). The majority reaffirms its 1992 policy of denying reopening to adjustment of status applicants with pending immediate relative visa petitions despite the fact that the 90-day period now prescribed for seeking reopening is often too short for the Immigration and Naturalization Service to adjudicate the visa petition. It compounds this mistaken policy by refusing to reconsider it or reopen when the Service finally approved the respondent's visa petition after we denied the original motion.

This harsh policy does not accomplish the congressional goal of bringing immigration cases properly to a close and does nothing to end marriage fraud. Instead, as a matter of course, the immigration of qualified spouses of United States citizens will be unduly delayed; the consular offices outside of the United States will be encumbered with applications more easily adjudicated in the United States; and this delay will cause needless hardship to the United States citizens whose bona fide marriages and families may disintegrate because their spouses will be deported and, as the majority dictates, be required to "complete the immigration process from outside the country."[1]  *Id.* The majority's policy is neither legally correct nor justified, as discussed below.

---

[1]The alternative of obtaining an immigrant visa through the consular process is impractical and inconsistent with congressional intent. Although the respondent could apply for an immigrant visa at a consular post abroad, his or her deportation would render him  excludable

## I. FACTUAL AND PROCEDURAL BACKGROUND

The respondent is a native and citizen of Sudan who came to the United States seeking asylum from his country, which has been designated for Temporary Protected Status due to its dangerous civil war and brutal regime. *See* 62 Fed. Reg. 59,737 (1997); *cf.* 63 Fed. Reg. 59,337 (1998) (extension of Temporary Protected Status); 1 Committees on Foreign Relations and International Relations, 106th Cong., lst Sess., *Country Reports on Human Rights Practices for 1998* 392 (Joint Comm. Print 1999). His appeal from a denial of asylum was dismissed on September 7, o Register Permanent Residence or Adjust Status (Form I-485) in accordance with C.F.R. § 245.2(a)(2)(i) (1996).

On September 25, 1996, the respondent submitted a motion to reopen seeking adjustment of status. The motion was accompanied by the July 27, 1994, certificate of marriage; the couple's birth certificates; a copy of an immediate relative visa petition on Form I-130 (Petition for Alien Relative), filed on the respondent's behalf by his United States citizen spouse; their United States citizen child's birth certificate; and documents similarly evidencing the bona fides of the marriage, such as joint income tax returns, bank statements, a residential lease, a telephone bill, and a cable television bill. Finally, the motion included the application for adjustment of status, Biographic Information Sheets (Form G-325A), a fingerprint chart, and the fee receipt, as required by 8 C.F.R. § 3.2(c)(1) (1997). The Service did not oppose the motion. *See* 8 C.F.R. § 3.2(g)(3).

However, the Service had not adjudicated the underlying immediate relative visa petition prior to the September 30, 1996, deadline for filing such a motion. Accordingly, on April 17, 1997, we denied the motion under the policy set forth in *Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992), *modifying Matter of Garcia,* 16 I&N Dec. 653 (BIA 1978), which requires prior Service approval of marital visa petitions before reopening for adjustment of status cases subject to the marriage fraud provisions of sections 204(g) and 245(e) of the Immigration and Nationality Act, 8 U.S.C. §§ 1154(g) and 1255(e) (1994 & Supp. II 1996).

On May 16, 1997, the respondent filed a timely motion to reconsider our April 17, 1997, decision, also unopposed by the Service, arguing that we should reconsider *Matter of Arthur, supra*, because it is inconsistent with the

---

from the United States. *See* section 212(a)(9) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a)(9) (Supp. II 1996). Further, Congress has recently made clear its preference for the adjustment of status process for aliens already in the United States whose visa petitions had been filed before January 14, 1998. *See, e.g.,* sections 212(o), 245(i) of the Act, 8 U.S.C. §§ 1182(o) and 1255(i) (1994 & Supp. II 1996). Finally, we have no diplomatic relations with the respondent's native Sudan.

new motions regulations, effective July 1, 1996, which permit only one motion to reopen to be filed and imposes a 90-day time limit to do so. *See* 8 C.F.R. § 3.2(c)(2) (1999). On January 13, 1998, the Service approved the respondent's visa petition as an immediate relative of a United States citizen.


## II. QUESTIONS PRESENTED

The question before the Board is how to treat an unopposed motion to reopen seeking adjustment of status with a simultaneously filed, but still pending, immediate relative visa petition, based upon a marriage entered into during deportation proceedings in view of the new regulations. A subsidiary question is what we should do when the Service approves the pending visa petition after we denied a motion under the *Arthur* rule.

The majority will neither grant reopening nor reconsider its prior decision denying the motion to reopen in such circumstances. In so doing, it reaffirms *Matter of Arthur, supra*, requiring prior approval of the underlying visa petition before granting a motion to reopen for adjustment of status despite the fact that there is now only a 90-day period of time when an alien can submit a motion to reopen under 8 C.F.R. § 3.2(c)(2).

I believe that by refusing to reconsider or grant the motion, the majority, in effect, turns the rebuttable presumption that the marriage of an alien in proceedings is fraudulent into an irrebuttable presumption inconsistent with the 1990 congressional directive to provide the spouse of a United States citizen with an administrative process by which he can seek adjustment of status if he proves that this marriage is bona fide when the Service does not adjudicate the visa petition within 90 days.


## III. POLICY ARGUMENT AGAINST THE ARTHUR RULE

Retaining the rule prescribed in *Matter of Arthur* precludes the respondent's statutory right to apply for permanent residence in the United States through adjustment of status when the Service eventually approved his immediate relative visa petition. *See* section 245 of the Act, 8 U.S.C. § 1255 (1994 & Supp. II 1996). In order to qualify for adjustment of status under section 245 of the Act, an alien in deportation or removal proceedings must apply for adjustment of status only in those proceedings. *See* 8 C.F.R. § 245.2(a)(1) (1999). If we persist in applying *Matter of Arthur*, we will effectively foreclose adjustment of status in all cases where timely motions to reopen for such relief are filed simultaneously with visa petitions in accordance with 8 C.F.R. §§ 3.2(c)(2) and 245.2(a)(2)(i) (1999). The statutory exception to the restriction on adjustment of status where bona fide marriages are entered into during proceedings will be negated by creating

an absolute bar to the adjustment of status based upon such marriages. *See* section 245(e)(3) of the Act. Contrary to the outcome accomplished by the majority, no absolute bar to adjustment of status is contained in the statute. *See also* 8 C.F.R. § 204.2(a)(iii)(B)-(E) (1999).

The majority's analysis confuses the district director's ultimate determination in adjudicating visa petitions that a marriage is bona fide for purposes of adjustment of status with the preliminary determination by the Board and the Immigration Judge that the marriage is prima facie bona fide and that a hearing should be allowed to consider the merits of the application. There is no conflict between our concluding that a marriage appears bona fide for purposes of granting a hearing and the district director's ultimate determination of the visa petition.

The majority's assertion, that since Congress is presumed to be aware of the *Arthur* rule its inaction means its approval, is a fallacy. In fact, Congress had already acted by prescribing in 1990 that the presumption was rebuttable, and the marriage fraud regulations, as explained below, specifically prescribe an administrative determination in the adjustment of status process. What Congress could not anticipate is that the majority would interpret its regulations to preclude the adjustment of status forum for eligible applicants. In any event, the recent congressional extension of the availability of section 245(i) relief to beneficiaries of visa petitions filed before January 14, 1998, suggests that Congress prefers that we adjudicate the respondent's prima facie approvable application.

It is the Board and the Immigration Judges that bear the responsibility to determine whether an alien in deportation proceedings may pursue an application for adjustment of status based on a bona fide marriage. *See* section 245(e)(3) of the Act; 8 C.F.R. §§ 204.2(a)(1)(iii)(D), 245.1(c)(9)(vii) (1999). We must determine the applicant's prima facie eligibility for adjustment of status under a clear and convincing evidence standard in accordance with 8 C.F.R. § 245.1(c)(9)(iii)(F), as we consider the only motion to reopen allowed by regulation. *See* 8 C.F.R. § 3.2(c)(2).

We need only decide that there is a reasonable likelihood that the statutory requirements for the relief sought will be satisfied. *INS v. Abudu*, 485 U.S. 94 (1988); *INS v. Jong Ha Wong*, 450 U.S. 139 (1981) (per curiam); *Matter of Coelho*, 20 I&N Dec. 464 (BIA 1992). Regulations issued subsequent to the Board's decision in *Matter of Arthur* provide an adequate framework to consider the respondent's assertion that his marriage is a bona fide marriage. *See* 8 C.F.R. § 204.2(a)(1)(iii)(B) (listing evidence to be relied upon to meet the bona fide marriage exemption to the marriage fraud provisions in sections 204(g) and 245(e) of the Act); *see also* 8 C.F.R. § 245.2(a)(2)(i) (instructing that adjustment applications are to be retained when filed simultaneously with immediate relative visa petitions).

## IV. LEGAL ARGUMENT AGAINST THE ARTHUR RULE

A review of the legal background relating to the *Arthur* rule shows that it is no longer justified. A motion to reopen for adjustment of status requires a prima facie showing of eligibility for such relief, including immediate visa availability. *See INS v. Doherty, supra; INS v. Abudu, supra; Matter of Gutierrez,* 21 I&N Dec. 479 (BIA 1996); *Matter of Coelho, supra.* As a result of a 1976 amendment to section 245 of the Act, the regulations permit filing an adjustment application simultaneously with a visa petition, where the approval of the petition would make an immigrant visa immediately available. *See* 8 C.F.R. § 245.2(a)(2) (1978); *Matter of Garcia, supra*, at 654-55.

Prior to the 1976 amendment to section 245, visa availability was only required when the application for adjustment of status was approved.[2] However, effective January 1, 1977, visa availability was required when the adjustment application was filed. Consequently, 8 C.F.R. § 245.2(a)(2) was amended to require immediate visa availability upon filing. *See* 41 Fed. Reg. 49,994 (1976). As a result, the Board issued two precedent decisions addressing these changes. *Matter of Garcia, supra*; and *Matter of Kotte*, 16 I&N Dec. 449 (BIA 1978).

*Matter of Garcia, supra*, addressed adjustment applications simultaneously filed with the marital visa petition because there was immediate visa availability. *Matter of Kotte, supra*, in contrast, addressed applications for adjustment of status that could not be simultaneously filed because to file for third-preference status required prior approval by the United States Department of Labor of a labor certification. We ruled that 8 C.F.R. § 245.2(a)(2) did not require holding in abeyance pending deportation proceedings until the employment preference visa petition was adjudicated. *Id.* at 452; *accord Matter of Ficalora*, 11 I&N Dec. 592 (BIA 1966) (sixth preference); *Matter of M-,* 5 I&N Dec. 622 (BIA 1954) (ineligible nonimmi-

---

[2]Prior to October 20, 1976, section 245(a) of the Act, 8 U.S.C. § 1255(a) (1970) provided:

> The status of an alien, other than an alien crewman, who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available at the time his application is approved.

*See also Matter of Kotte*, 16 I&N Dec. 449, 452 n.2 (BIA 1978).

grant seaman overstay). Whether an alien qualified for third-preference status was solely within the exclusive jurisdiction of the district director, and an appeal from a denial was solely before the Service's Regional Commissioner under 8 C.F.R. §§ 103.1(m)(2) and (n) (1978), and specifically outside our appellate jurisdiction pursuant to 8 C.F.R. § 3.1(b)(5) (1978). *Matter of Kotte, supra*, at 452; *cf.* 8 C.F.R. § 3.1(b)(5) (Board appellate jurisdiction over most familial visa petitions). The remedy was to move to reopen once the third-preference visa petition was approved. *Matter of Kotte, supra*, at 452, and cases cited therein. The recently promulgated one-time and 90-day limits upon motions to reopen prescribed by 8 C.F.R. § 3.2(c)(2) no longer allow this remedy.

*Matter of Garcia, supra*, addressed, instead, applications simultaneously filed with immediate relative visa petitions. *See Matter of Guiragossian*, 17 I&N Dec. 161, 164 n.5 (BIA 1979); *Matter of Yodying*, 17 I&N Dec. 155 (BIA 1979). If the visa petition is subsequently approved, the adjustment application is deemed to have been properly filed with the accompanying petition. *Matter of Garcia, supra*, at 654-55. Since the date an adjustment application is filed determines whether a visa is immediately available, and the regulation allows a qualified applicant to preserve immediate visa availability, we decided that absent clear ineligibility, a motion to reopen should generally be granted for adjustment applications supported by simultaneously filed visa petitions with immediate visa availability. *Id.* at 657. A pending prima facie approvable visa petition would be treated as though it were already approved for purposes of reopening.

The Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, 100 Stat. 3537, prohibited approval of visa petitions and adjustment applications based on marriages entered into while an alien was in proceedings. Thus, the rules prescribed in our decision in *Matter of Garcia, supra*, for purposes of reopening by beneficiaries of pending marital visa petitions, had no consequence after the 1986 Marriage Fraud Amendments were enacted. However, when Congress again amended the statute in 1990 to allow approval of such visa petitions and adjustment applications if the alien established by clear and convincing evidence that the marriage was bona fide, we had to devise a new policy regarding motions to reopen with visa petitions based on bona fide marriages entered into while in expulsion proceedings. We did not have to then consider the effect of the one-time and 90-day limitations which became effective 6 years later.

Under the amended statute, a marriage entered into while an alien was in proceedings was deemed presumptively fraudulent, the presumption was rebuttable by a showing of clear and convincing evidence that the marriage was entered into in good faith, and Congress expressed a legislative intent that aliens marrying after proceedings are initiated should be given an opportunity to present for administrative review such clear and convincing evidence that their marriage was bona fide. *See* H.R. Conf. Rep. No. 101-

955, at 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793. Because we perceived potential jurisdictional problems with the district director's primary role of adjudicating visa petitions, we held as a matter of policy that we would "hereafter decline to grant motions to reopen" where the alien married a United States citizen or lawful permanent resident while the alien's proceedings were pending until the Service approved the marital visa petition filed on the alien's behalf. *Matter of Arthur, supra*, at 479.

The subsequently enacted regulations prescribing procedures for bona fide marriage adjudications avoid such jurisdictional problems, and require that we provide a forum for adjustment applicants with bona fide marriages. The regulations at 8 C.F.R. §§ 245.1(c)(9)(iii)(F) and (iv) confer jurisdiction on the Immigration Court to at least consider prima facie evidence of a bona fide marriage for purposes of reopening. The regulation at 8 C.F.R. § 245.1(c)(9)(iii)(F) specifically states that the prohibition against adjustment of status on the basis of a marriage while in deportation proceedings does not apply if the alien establishes that the marriage is bona fide by providing clear and convincing evidence that the marriage was entered into in good faith. The regulation at 8 C.F.R. § 245.2(a)(2) permits simultaneous filing of the visa petition and adjustment application, and under 8 C.F.R. § 245.2(a)(1) the Immigration Court has sole jurisdiction over adjustment applications after an alien is placed in deportation proceedings.

Since the Immigration Court has sole authority to entertain a bona fide marriage exemption request for adjustment relief under 8 C.F.R. § 245.1(c)(9)(iii)(F), it follows that the Immigration Court can also make a preliminary assessment of evidence presented in connection with the exemption request for purposes of reopening. The regulation at 8 C.F.R. § 245.1(c)(9)(iv) specifies that the request for the bona fide exemption must be "submitted with the Form I-485, Application for Permanent Residence." Consequently, it is logical that the official who has sole authority to consider the application can also consider the accompanying bona fide marriage exemption request for purposes of reopening as part of the application.

After making this preliminary assessment, we may reopen, pending adjudication of the visa petition by the district director. Once the Service approves the visa petition, the Immigration Judge may rule on the application, consistent with the district director's authority to adjudicate visa petitions. Otherwise the Service could preclude adjustment of status simply by holding the visa petition without adjudicating it for more than 90 days since 8 C.F.R. § 3.2(c)(2) allows only one motion. Assuming arguendo that the Service could as a matter of discretion delay its adjudication such an intent should not be presumed when in fact the visa petition was approved and the Service did not oppose either motion in this case.

## V. CONCLUSION

Subsequent legislation and recent amendments to the federal regulations require that we revisit *Matter of Arthur, supra*, in order to preserve the

one opportunity for administrative review prescribed for adjustment applicants meeting the bona fide marriage exception, at least in cases where the Service does not oppose reopening. The fact that the 1996 regulations were enacted as a result of the same 1990 statute[3] requiring us to provide an administrative review of the bona fides of marriages in adjustment applications requires that we interpret the regulations in pari materia to complement rather than counter each other by the *Arthur* rule, which in effect deprives an alien of the sole forum prescribed by 8 C.F.R. §§ 245.1(c)(9)(iii)(F) and (iv), and 8 C.F.R. § 245.2(a)(1).

To deny reopening because the Service has not completed its adjudication of the visa petition, as the majority insists must be done, and then deny reconsideration of the denial after the Service approves the visa petition defeats the purpose of the regulations that allow for a United States citizen to file a simultaneous visa petition on behalf of a spouse. The record reflects that the Service did not oppose the motion to reopen and has not opposed the respondent's motion to reconsider. Why conclusively presume otherwise? The majority also disregards the authority of this Board and of the Immigration Judges to adjudicate whether a respondent is a party to a bona fide marriage under the regulations. No legitimate governmental interest is furthered by effectively precluding a forum to spouses of United States citizens who submit a visa petition within the strict limits prescribed by the regulations. It is only that result that is accomplished by the majority's disposition of this matter.

Finally, although the majority has declined to reconsider its denial of the motion, I note that in *Matter of J-J-,* 21 I&N Dec. 976 (BIA 1997), we held that we would reopen or reconsider cases sua sponte in exceptional circumstances. On December 23, 1997, the Service issued instructions containing guidance as to when the Service may consent to reopening because of exceptional and compelling circumstances a case that is otherwise barred from such reopening by the 8 C.F.R. §§ 3.2(c)(2) and 3.23(b)(1) one-time and 90-day limitations. *See* 8 C.F.R. § 3.2(c)(3)(iii). These guidelines describe the following factors, all of which are present in the respondent's

---

[3]Congress had also amended the Act to address the problem of dilatory motions. *See Stone v. INS*, 514 U.S. 386, 400 (1995). Section 545(d) of the Immigration Act of 1990, Pub. L. No. 101-649, 104 Stat. 4978, 5066 ("IMMACT 90"), directed the Attorney General to issue regulations limiting the number of motions to reopen seeking relief from deportation and the maximum time period during which such a motion may be submitted. *See also* H.R. Conf. Rep. No. 101-955, at 133 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6798. Congress also enacted then section 242B(e)(2) of the Act, 8 U.S.C. § 1252b(e)(2) (1994), another provision designed to limit dilatory court tactics. *See Stone v. INS, supra*. Subsequently, additional restrictions on dilatory acts and eligibility for relief from deportation were prescribed by the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Division C of Pub. L. No. 104-208, 110 Stat. 3009-546.

case:

> (1) whether the alien has presented new evidence that is material and was not available and could not reasonably have been discovered or presented at the former hearing; (2) whether the alien is statutorily eligible for the relief sought; (3) whether the alien merits a favorable exercise of discretion; (4) the hardship to the alien and/or his USC or LPR family members if the alien were required to procure a visa through consular processing (including the potential applicability of section 212(a)(9) should the alien depart the United States; (5) the alien's criminal history, if any; (6) the number and severity of the alien's immigration violations; (7) whether the alien has cooperated with, or his continued presence in the United States is desired for, a criminal or civil investigation or prosecution conducted by a federal, state or local law enforcement agency; and whether the alien's removal is consistent with INS objectives.

Memorandum from Office of the General Counsel to Regional and District Counsels, Motions to Reopen Policy (Dec. 23, 1997), *reprinted in* 75 Interpreter Releases, No. 7, February 23, 1998, app. III, at 275-76.

In this case, the visa petition was timely submitted but approved long after we denied the respondent's motion to reopen. The respondent appears prima facie eligible for relief and worthy of discretion. His United States citizen wife and child will undoubtedly suffer if he is forced to be deported, as section 212(a)(9) of the Act, 8 U.S.C. § 1182(a)(9) (Supp. II 1996), would render him inadmissible, and there appear to be no criminal or other violations present in the record before us. Moreover, as noted above, his country has been designated for Temporary Protected Status. Consequently, reopening these proceedings in order to adjudicate the respondent's application appears to be consistent with the Service's objectives.

On July 23, 1997, while promulgating regulations to implement section 245 of the Act, the Service recognized that the adjustment of status process is the preferred method of obtaining immigrant status for eligible aliens presently in the United States, and found that "Congress, having thus invited such applications, [could not have] intended to create the futile situation in which most entrants without inspection would be admissible solely for the purpose of filing an adjustment application, but would be precluded from ever being able to adjust status based on the same application." 62 Fed. Reg. 39,417, 39,422 (1997). Similarly, properly filed motions to reopen for adjustment of status in which a prima facie showing of a bona fide marital relationship is established should be granted. The goals of promoting family unity and efficiently resolving cases through the adjustment of status mechanism is better served by providing a forum to consider an adjustment application submitted by a qualifying spouse who has demonstrated a prima facie showing of a bona fide marriage. *See Matter of Cavazos*, 17 I&N Dec. 215 (BIA 1980); *cf. Matter of Ibrahim,* 18 I&N Dec. 55 (BIA 1981). *See generally INS v. Errico,* 385 U.S. 214 (1966) (congressional purpose to forestall deportation where it breaks up family of United States citizen); *Matter of Da Lomba*, 16 I&N Dec. 616 (BIA 1978).

Absent individual adverse factors we can not invoke discretion to deprive a class of eligible applicants of the sole forum prescribed by the regulations and section 245(e)(3) of the Act for consideration of their bona fide marriages. *See* 8 C.F.R. §§ 245.1(c)(9)(iii)(F), (iv); 245.2(a)(1), (2). It is well settled that the Attorney General from whom we derive our authority can not disregard the procedure prescribed by the regulations as they have the force of law. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954); *Matter of Ponce de Leon,* 21 I&N Dec. 154 (BIA 1996; A.G., BIA 1997). In determining whether to exercise our delegated power under 8 C.F.R. § 3.2(a)(2), we should apply the test prescribed in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which takes into account three factors: the interest at stake for the individual; the risk of erroneous deprivation of that interest; and the Government's administrative burden. *See Padilla-Agustin v. INS,* 21 F.3d 970 (9th Cir. 1994); *Hernandez v. Cremer*, 913 F.2d 230 (5th Cir. 1990); *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555 (11th Cir. 1989), *aff'd sub nom. McNary v. Haitian Refugee Center, Inc.,* 498 U.S. 479 (1991). Here the fundamental nature of the marital relationship being threatened by our failure to provide a forum, and the reduced administrative burden entailed in proceedings likely to result in the prompt and fair resolution of the respondent's status favor reopening.

The fundamental role of marriage in our society requires access to our courts without creating an effectively irrebuttable presumption for purposes of adjustment of status, that the marriage is mala fide. Granting this timely filed motion to reopen would be consistent with the due process right to be heard at a meaningful time and in a meaningful manner in view of the 90-day and one-time limitations imposed by 8 C.F.R. § 3.2(c)(2) (1997). *See Mathews v. Eldridge, supra; Bell v. Burson*, 402 U.S. 535 (1971); *Armstrong v. Manzo*, 380 U.S. 545 (1965). Under these circumstances the Service should consider joining in the respondent's motions pursuant to its December 23, 1997, guidelines.